Joan E. Farr
7145 Blueberry Lane
Derby, KS 67037
Phone: 918.698.3289
JoanFarr73@aol.com

**FILED**
U.S. District Court
District of Kansas

MAR 3 0 2022

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Joan E. Farr, individually, *pro se*, and in the interests of innocent American citizens, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2:22-cv-2120-DCC-KGG |
| Christine Curry, Kansas Legal Services, Inc., Attorney Rebecca Hesse, other known/unknown state and government actors, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

COMES NOW the plaintiff, Joan E. Farr, individually *pro se,* and in the interests of innocent

American citizens, and files this Complaint against the defendants as follows:

### A. PARTIES

1.   Plaintiff, Joan E. Farr, is an individual representing herself *pro se* with residence located at 7145

Blueberry Lane, Derby, Kansas 67037. Plaintiff, Joan Farr, is hereinafter referred to as the same, or " Ms.

Farr."

2.   Defendant, Christine Curry, is an individual with residence located 5840 S. Webb Road, Derby,

Kansas 67037. Defendant, Christine Curry, may be served at the office of her attorney, Rebecca Hesse,

whose office is located at Kansas Legal Services, Inc., 340 South Broadway, 2nd Floor, Wichita, Kansas

67202. Defendant, is hereinafter referred to as the same, "poser," "Christine," "Curry," "Ms. Curry," "CIA,"

"DOD," "DOJ," "FBI," "the government," "alphabet soup," "Senator James Inhofe," and any and all other

known/unknown state actors within the government and its agencies thereof.

1

3.  Defendant, Kansas Legal Services, Inc., is a non-profit organization located at 712 S. Kansas Avenue, Suite 201, Topeka, Kansas 66603. Defendant, Kansas Legal Services, Inc., may be served at the office of their resident agent Marilyn Harp located at Kansas Legal Services, Inc., 712 S. Kansas Avenue, Suite 201, Topeka, Kansas 66603. Defendant, is hereinafter referred to as the same, "Legal Aid," "Rebecca Hesse," "Law Offices of Rebecca Hesse," "Attorney Hesse," "Christine Curry," "CIA," "DOD," "DOJ," "FBI," "the government," "alphabet soup," "Senator James Inhofe," and any and all other known/ unknown state actors within the government and its agencies thereof.

4.  Defendant, Attorney Rebecca Hesse, is a Wichita area attorney with offices located at 340 South Broadway, 2nd Floor, Wichita, Kansas 67202. Defendant, Attorney Rebecca Hesse, may be served at her office located at Kansas Legal Services, 340 South Broadway, 2nd Floor, Wichita, Kansas 67202. Defendant, is hereinafter referred to as the same, "Attorney Hesse," "Law Offices of Rebecca Hesse," "Kansas Legal Services, Inc.," "Legal Aid," "Ms. Curry," "Christine Curry," "CIA," "DOD," "DOJ," "FBI," "the government," "alphabet soup," "Senator James Inhofe," and any and all other known/unknown state actors within the government and its agencies thereof.

5.  Other known/unknown state and government actors include any and all other known/unknown state and/or government actors working within or for the United States government and its agencies thereof. These include the government defendants in plaintiff's previous federal lawsuit filed in April 2021 which was dismissed in January, 2022 (**Case No. 2:21-cv-2183-JWB-TJJ**). These include but are not limited to:  United States Senator James Inhofe, the Department of Defense (DOD), Department of Justice (DOJ), Federal Bureau of Investigation (FBI), Central Intelligence Agency (CIA), Internal Revenue Service (IRS), and other known/unknown state actors, hereinafter referred to as the "government defendants." Other known/unknown state and government actors includes Acting United States Attorney Duston Slinkard and Assistant United States Attorney Christopher Allman who were in privity with them in early August, 2021.

**B.   FACTS PERTAINING TO THE PARTIES**

6.  Plaintiff Joan Farr is an individual residing at 7145 Blueberry Lane, Derby, Kansas.

7.    Ms. Farr is a resident of Sedgwick County in the state of Kansas which is in the United States of America.

8.    Defendant, Christine Curry, is an individual and state actor who works for the United States government as a self-employed contractor for the CIA in the Wichita, Kansas area. She has been working as a nurse without a license in one or more medical facilities in the Wichita area for over 20 years.

9.    Defendant, Kansas Legal Services, Inc., is a non-profit organization affiliated with the State of Kansas having offices located throughout the state of Kansas. They were hired by defendant Christine Curry to represent her in the federal lawsuit plaintiff filed against her in 2021 and who conspired with her and U.S. Attorneys Slinkard and Allman to bring false stalking and contempt charges against plaintiff.

10.    Defendant, Attorney Rebecca Hesse, is a lawyer working for Kansas Legal Services, Inc. in the Wichita, Kansas area. She was hired by defendant Christine Curry to represent her in the federal lawsuit plaintiff filed against her in 2021 and who conspired with her and U.S. Attorneys Slinkard and Allman to bring false stalking and contempt charges against plaintiff.

## C.  FACTS PERTAINING TO THE CASE

11.    Plaintiff Joan Farr is a 66-year old widow whose main residence is in Kansas. She also owns a small home in Tulsa, Oklahoma where she relocated her business in 2013.

12.    Ms. Farr has never been charged with any crime.

13.    Plaintiff's current income is approximately $29,424 annually which she receives from Social Security and pensions. She is semi-retired as a pre-litigation consultant since 2020, but she has never been a lawyer.

14.    Ms. Farr currently cares for her adult son who is disabled and cannot work. They live at her home in Derby, Kansas, and she also owns a smaller home in Tulsa where she relocated her business in August 2013.

15.    In 1999, Ms. Farr made the front page of the paper as the first woman homebuilder in the Wichita area. Male builders worried that she would take away their business, so they put her under and 45

lawyers were influenced not to represent her in a lawsuit she filed to save her business. It was dismissed all the way up, and she has not been able to acquire representation by a lawyer since then.

16.    This experience led Ms. Farr to write a book, and from 2003 – 2019, she was the C.E.O./ Founder of the Association for Honest Attorneys (A.H.A!), a non-profit organization to help people find honest lawyers, improve the legal system and seek "justice for *all.*" It was an educational organization but also faith-based, since they always quoted the Bible in their newsletters.

17.    Plaintiff was C.E.O. of the A.H.A! from 2003 – 2019. During that time, she helped thousands of innocent people who were taken advantage of by unethical attorneys or who were being targeted by the government, mostly women and Christians. The A.H.A! began a quarterly newsletter, created a list of "Lawyers to Avoid & Consider" and would often help people sue lawyers and other government officials.

18.    Plaintiff was under constant surveillance by the government due to a National Security Letter that had been falsely issued against her which put her on the terrorist watch list.

19.    She tried everything she could to get it removed, but nothing worked.

20.    When plaintiff's husband died unexpectedly in 2006, she did not date anyone for 10 years. She chose instead to focus on raising her sons and continue her non-profit work.

21.    After his death, the government often tried to distract plaintiff from her A.H.A! activities by having "posers" try and friend her on Facebook to engage her in a romantic relationship.

22.    They were usually current or former men in the military who were widowers and had a daughter like she had always wanted. However, she never took the bait.

23.    In 2016, plaintiff ran into her old boyfriend from high school. They became involved in an intimate relationship which lasted over three years.

24.    They often dined and traveled together, shared daily devotions, talked about future plans and attended a Bible study together. They would text each other as many as 10 times a day.

25.    God gave Ms. Farr many signs that her old boyfriend was her "soul mate," and she loved him deeply. He was her life.

26.    In March 2020, plaintiff decided to run as an Independent candidate for the United States

Senate in Oklahoma where she had relocated her business in 2013 and owned a small home.

27.   Ms. Farr used mostly her own money to run for office, even though she didn't have much. She had never taken a salary as C.E.O. of the A.H.A! and except for 2019 when she got a windfall, her family had been living at poverty level for over 15 years.

28.   At that time, her opponent was incumbent Republican Senator James Inhofe who was 86 years old. He was a wealthy career politician who had been in Congress for 33 years and politics for 53 years.

29.   Senator Inhofe earned $176,000 annually as a United States Senator. He was the 18th wealthiest senator in Congress and is reportedly worth an estimated $7.5 million dollars.

30.   From 2018 – 2020, Senator Inhofe was Chairman of the Armed Services Committee over all of the United States military. The military conducts surveillance on people using various methods, the majority of which is done electronically through their cell phones, computers and other devices.

31.   On April 8, 2020, plaintiff filed to run for the United States Senate in Oklahoma against defendant Senator Inhofe.

32.   On April 9, 2020, Senator Inhofe wrote a letter to Ms. Farr thanking her for her "generous contribution" to his re-election campaign.

33.   After receiving this letter on or about April 14, 2020, Ms. Farr posted a copy of it on Facebook. She commented that this was not actually true, she had donated $1,000 to him two months prior for his assistance in helping her acquire the Medal of Honor for her father killed in Viet Nam.

34.   However, she quipped in her post, that since Senator Inhofe wasn't able to accomplish this, she would have to help her father get the medal when she got into office.

35.   On or about April 16, 2020 a close family member of plaintiff's was targeted by the government defendants and given Covid using Directed Energy Weapons (DEW). He was sick for three weeks and recovered, but his roommate later died.

36.   It was at this point that plaintiff realized that Senator Inhofe was involved in conspiracy and collusion with the defendants to target her and her loved ones just for running against him.

37.   Shortly thereafter, Ms. Farr sent an email to Senator Inhofe telling him that she would have to

sue him if he did not stop targeting her and her family. He responded by retaliating to break up her relationship with her soul mate who had coincidentally, made a $100 donation to her campaign on line in early April, 2020.

38.   The government defendants were also concerned that he might then finance her whole campaign.

39.   In late May, 2020, plaintiff's old boyfriend told her he was interested in another woman named Christine whom he had taken to lunch a few times. Plaintiff was upset and told him that their relationship was over.

40.   In late summer 2020, plaintiff's ex told her in a phone conversation that he had just kept running into Ms. Curry, that she was an LPN, and that she'd had a falling out with the Catholic church and now just helped out at different churches.

41.   Plaintiff knew from her past non-profit work that the government uses spies to monitor churches for compliance with non-profit rules and regulations. She herself had been illegally under surveillance and harassed for years in hospitals by self-employed contractors working for the CIA in the Wichita area due to the National Security Letter that had been issued against her.

42.   She was certain that defendant Christine was a "poser" for the CIA and that she was conducting surveillance on her and her ex to break up their relationship.

43.   Plaintiff told her ex that she was a "poser" working for the government, but he didn't believe her.

44.   Christine was younger, prettier and healthier than plaintiff. Her ex said that he had just kept running into her when actually, she was surveilling him and knew the places that he frequented.

45.   Senator Inhofe and the government defendants knew from monitoring plaintiff's phone texts that she was deeply in love with her old boyfriend, and that by placing a younger attractive woman in his path who had his similar interest in cycling that this would break up plaintiff's relationship with him.

46.   Plaintiff was devastated when they did not make up right away like they usually did when they had a tiff. She became severely depressed and could hardly campaign.

47.   Ms. Farr's ex still would not believe plaintiff's claims and continued to see Christine.

48.   Christine took her ex on long bicycle rides of 100 miles or more so that he would become

exhausted and not want to engage in intimacy.

49.   She brainwashed him into focusing on being productive and staying busy instead of thinking about his prior romance with Ms. Farr. Soon he began to make comments to plaintiff which suggested that any affection toward a woman was sinful.

50.   Plaintiff realized that Christine was brainwashing him and became even more depressed. She would often cry uncontrollably, her anxiety worsened and she began to drink more.

51.   She knew that it was God's will for them to be together, but now her dreams were shattered. Her heart was broken.

52.   Plaintiff could not convince her ex that Christine was deceiving him and working for the CIA. She detected an obvious change in her ex's behavior and later realized that it was due to Curry's use of CIA mind control to turn him away from her.

53.   The CIA hires self-employed contractors and are well-known for their clandestine activities which includes surveillance and targeting of innocent people, money laundering and discreetly causing the deaths of people in the hospital from "natural causes." They have been affiliated with McConnell Air Force Base and have been operating in the Wichita, Kansas area for years.

54.   Their operatives have tried to discreetly kill plaintiff on numerous occasions while she was in the hospital for surgeries from 2006-2016, and succeeded in killing a woman named Sharon Frank in 2006 using the same "steroid cocktail mix I.V." they tried on her (See Case No. 09-4146-RDR-KGS).

55.   In her past non-profit work, plaintiff had been involved in many cases in Kansas where members of the government were using lawyers and/or government operatives to fraudulently extort money into the legal system from unsuspecting wealthy people mainly in divorce/custody battles.

56.   The most notable was that of John Sigg in Iola, Kansas whose business lawyer began having an affair with his wife of 40 years. His divorce continued for 12 years as lawyers/judges funneled over $2,000,000 of his money into the legal system. (See Case #06-2436).

57.   Senator Inhofe and government state actors continued to try and sabotage plaintiff's campaign. Plaintiff's website domain company confirmed that incoming emails to her had been blocked by AOL/

7

Yahoo for months, and she was unable to respond to a few emails that did come through.

58.   Ms. Farr's social media accounts and some online donations were also being blocked, so she filed a report with the FBI on July 6, 2020. They did not respond.

59.   It was apparent to Ms. Farr that her social media accounts including Facebook were being illegally surveilled by Senator Inhofe and the government to subvert her campaign. He was also controlling the mainstream media to keep her from acquiring any publicity.

60.   In August, 2020, plaintiff spoke to a man named Steve Clark in the Wichita area who admitted to her that he had been a "poser" and had worked for the government there. He told her that after he had gotten out of the Air Force, the CIA and FBI in Wichita had approached him to spy at a company, and although he was never asked to break up a relationship, he knew that it went on.

61.   Plaintiff tried her best to get involved in campaigning. She was invited to attend a "Boots, Bandanas & BBQ" event at the governor's mansion in Oklahoma on September 2, 2020, so she went.

62.   There she met a man who told her he had planned to run against Senator Inhofe 15 years earlier. However, he said he backed out when Senator Inhofe threatened him and got his wife fired.

63.   Plaintiff did not want her old boyfriend to get taken to the cleaners by Christine and the other defendants. So she expressed concern for him in her October A.H.A! newsletter.

64.   Plaintiff's ex was offended by this and distanced himself from her further.

65.   Of course, Ms. Farr lost badly to Senator Inhofe in the November 2020 election.

66.   Due to Senator Inhofe's abuse of power and the actions of the government defendants to cause her emotional distress and bodily harm, plaintiff suffered severe depression and could no longer engage in her normal business activities. She lost significant income and retired on December 31, 2020.

67.   During her campaign and up until February 2021, plaintiff had contacted Senator Inhofe's office on four separate occasions telling him she would have to sue him if he did not stop targeting her and asked him to send Christine on another assignment. He refused to respond and her remarks only made him target her more.

68.   Ms. Farr was further depressed after seeing the fraud that occurred to keep President Trump

from being rightfully re-elected. In late January, 2021, she shut down her websites, went off of social media and decided to go "off the grid" in a new direction.

69.   Plaintiff contacted Senator Inhofe by email yet again, telling him she did not want to have to file a lawsuit and to send Curry on another assignment. He refused to acknowledge her emails.

70.   In March, 2021, plaintiff contacted senators in Kansas and Oklahoma to help expedite her efforts to adopt a little girl in another state and to end the targeting against her once and for all.

71.   On the early morning of Friday, March 26, 2021, she mentioned in a telecon to an assistant at the Kansas senator's office that she just wanted to adopt a little girl and move away. This triggered Senator Inhofe to target plaintiff again and try to obtain $109,000 in back taxes she never really owed.

72.   On Monday, March 29, 2021, Ms. Farr received a certified letter from the IRS notifying her of their intent to levy liens on her homes in Kansas and Oklahoma that she had been trying to sell.

73.   When she called the IRS that day, Agent Joseph Ibarra told her that they had already filed liens against both of her houses and that she would be getting another letter to this effect soon.

74.   This made no sense since in May 2019 after receiving a lump sum of $48,000 from a client, plaintiff had tried to offer this money as a compromise through both the IRS and Senator Inhofe's office when she didn't even owe it. They did not respond, so she went on to buy her small home in Tulsa.

75.   In the same telecon on March 29, 2021, plaintiff told IRS Agent Ibarra that they were past the 10-year statute of limitations for trying to collect on the $109,000 in taxes they had falsely assessed against her. He told her that she could argue this at the hearing if she filed an appeal.

76.   Plaintiff never owed the IRS $109,000. She had always paid her taxes, but the IRS had fabricated these numbers from an audit of her non-profit organization in 2013.

77.   In fact, non-profit groups like plaintiff's organization (the A.H.A!) who had used the words "Tea Party" or "patriot" in their literature were targeted by the IRS during that time. IRS official Lois Lerner was later fired, and the groups had won a $3.5 million settlement against the IRS.

78.   Now the IRS liens were causing plaintiff to lose a contract on a property she was trying to buy in another state, and she stood to lose over $60,000 in equity if she sold her home in Tulsa.

79.  Plaintiff suffered mental anguish wondering if she was going to end up out on the street.

80.  On or about March 26, 2021, plaintiff became aware that her ex was fixing up his basement with the intent of having Christine move in. She feared that this would lead to her illegally extorting his assets in some manner, such as claiming common law marriage, then breaking up with him and using the legal system to convert his assets to the government defendants – another "mission accomplished."

81.  This is when it became apparent to plaintiff that Senator Inhofe's refusing to settle was because Curry's mission for the CIA was to steal her ex's life savings.

82.  On April 6, 2021, plaintiff was so distraught that she had a meltdown at her Bible study. The thought that her ex was in danger of losing his money or his life from "natural causes" inflicted by Christine caused her such mental anguish that she ruptured a disc in her neck. She was on medication and had to see an acupuncturist and chiropractor.

83.  There was no end in sight to the arrogance and oppression of the government defendants, especially a career politician like Senator Inhofe, in targeting her just because she ran against him and was a Christian.

84.  On April 7, 2021 in an e-mail exchange with a Kansas senator's office, plaintiff tried to find out what agency Christine worked for so they could direct a congressional inquiry. They told her that they could do an inquiry for her to try and remove her from the FBI National Security Watchlist but refused to tell her which agency Christine worked for, stating that this would be "unethical, unprofessional and illegal" according to the US Board of ethics rules and regulations.

85.  Plaintiff asked which rule they were referring to, but they could not cite any.

86.  In truth, the government did not want Christine's identity revealed in the same way that **Valerie Plame** had been outed as a CIA agent in 2003. Since Christine was about to make them a lot of money by swindling plaintiff's ex, they didn't want to risk losing it.

87.  Plaintiff realized that the change in her ex's behavior was due to Ms. Curry's use of CIA mind control to turn him against plaintiff and break up their relationship.

88.    On April 21, 2021, plaintiff filed a lawsuit in federal court against the government defendants

(Senator Inhofe, the DOD, DOJ, FBI, CIA, IRS, and Christine (last name unknown at the time - a state actor)

for violating her rights which included the same claims in this lawsuit (**Case No. 2:21-cv-2183-JWB-TJJ**).

At the time, she was unaware of what Christine's last name was or where she lived.

89.    In late July, 2021, plaintiff drove by her ex's house and saw a car in the driveway. She believed

this to be Ms. Curry's vehicle and asked a private investigator to run the license plate.

90.    Two private investigators advised plaintiff that Curry had moved 15 times in the Wichita area in

15 years (extorting money from unsuspecting wealthy men), and that she was operating as an LPN in

Wichita hospitals for over 20 years without a license.

91.    The private investigator advised plaintiff that defendant Christine's last name was Curry and

that her address was that of plaintiff's ex. Only then did she know that Ms. Curry had moved in with him.

92.    Plaintiff also learned that defendant Curry had bought a house in May 2019 with a 56-year

old man named Craig Charles and had used the name "Barbara Milligan" as an alias in the past.

93.    After finding out that Christine's last name was "Curry," plaintiff then had to try four times to

effect proper service of her lawsuit on her. Curry was avoiding service and plaintiff had to hire a process

server who finally taped it to the door of her residence.

94.    Defendant Ms. Curry was unable to acquire an attorney to represent her and became extremely

distraught. In early August, 2021, she then conspired with Acting U. S. Attorney Duston Slinkard and

Assistant U. S. Attorney Christopher Allman who were representing the government defendants in plaintiff's

federal lawsuit to file false stalking charges against plaintiff. (**Case 2021-DM-004573-PS**).

95.    Curry and Hesse then conspired with U. S. Attorneys Slinkard and Allman to file false stalking

charges against plaintiff and repeatedly sent the sheriffs to her door three times to cause her further distress.

96.    The stress of being persecuted with false charges and continued harassment by sheriffs to violate

her rights caused plaintiff increased anxiety, insomnia, and exacerbated her skin cancer which had been in

remission resulting in a squamous cell carcinoma on her leg and hair loss.

97.    On August 26, 2021, plaintiff announced on social media that she was running for the United

States Senate in Kansas in Oklahoma in 2022.

98.   On September 2, 2021, plaintiff attended a hearing where Ms. Curry was unrepresented and pretended to be deathly afraid of her. Ms. Curry accused her of needing mental help and under duress, pressured her ex into saying he thought she might be delusional.

99.   To further retaliate against plaintiff, Ms. Curry then conspired with U.S. Attorneys Slinkard and Allman to help her acquire counsel through Kansas Legal Services, Inc., and she hired defendant Rebecca Hesse who had her own practice called Law Offices of Rebecca Hesse but also worked for Legal Aid.

100.   Plaintiff was fed up. She sent an email to U.S. Attorney Christopher Allman telling him to cease and desist harassing her or she would sue him, Curry and others for conspiring against her (**EXHIBIT A**).

101.   On or about September 6, 2021, defendants Curry, Hesse and Legal Aid, at the direction of U. S. Attorneys Slinkard and Allman who were directed by government defendants in plaintiff's federal lawsuit, filed fraudulent contempt charges against plaintiff for sending copies of court documents to Curry in her federal suit. They knew all along that plaintiff was legally required to do this per Federal Rule 4.

102.   The defendants charged plaintiff with contempt for continuing to send her letters which Curry never opened and were obvious copies of court documents. She and Attorney Hesse with Kansas Legal Aid used photos of these to falsely charge plaintiff with three counts of contempt to try and put her in jail.

103.   Plaintiff had a lawyer friend who offered to review the court documents filed by Curry and the defendants. He told her that they weren't just trying to put her in jail, they were trying to get a psyche evaluation to have her committed so no one would vote for her in the upcoming 2022 election.

104.   Plaintiff researched the charges against her and discovered that K.S.A. 60-31a06(g) states: "A non-contact or restraining provision in a protective order issued pursuant to this section shall not be construed to prevent:...(3) a defendant or defendant's attorney from sending plaintiff copies of any legal pleadings filed in court relating to civil or criminal matters presently relevant to the plaintiff."

105.   This was clear and convincing evidence that the defendants knowingly and maliciously filed false contempt harges against plaintiff to cause her intentional emotional distress and bodily harm.

106.   Plaintiff then filed documents in the stalking case to prove that Attorney Hesse as a seasoned lawyer always knew that the contempt charge was fraudulent, as did U. S. Attorneys Duston Slinkard and Christopher Allman who conveyed this to Ms. Curry. She included the affidavit of Steve Clark who confirmed that Christine was a "poser" working for the CIA **(EXHIBIT B).**

107.   At the hearing on October 27, 2021 in which the defendants tried to defame plaintiff and have her jailed or committed, the county court judge dismissed the contempt charges against her **(EXHIBIT C).**

108.   The defendants had all engaged in malicious prosecution to cause plaintiff intentional emotional distress and severe mental anguish. She suffered injuries which include, but are not limited to: increased anxiety, insomnia, a ruptured disc in her neck, hair loss, and a squamous cell carcinoma on her leg.

109.   In January, 2022, plaintiff's federal lawsuit was dismissed in federal court, stating that she had failed to file an FTCA claim Form 95 prior to filing her suit.

110.   On February 3 & 18, 2022, plaintiff mailed her FTCA claim Form 95 both certified return receipt and then Fed Ex to seven different locations at the direction of FTCA lawyers. She included her claims against Senator Inhofe and the government defendants (DOD, DOJ, FBI, CIA and IRS) including U. S. Attorneys Slinkard and Allman and mentioned the actions of the defendants named herein.

111.   On or about February 25, 2022, Senator James Inhofe announced his resignation.

112.   To date, plaintiff's FTCA claim Form 95 appears to have been received by all parties which is within the two-year statute of limitations of approximately April 16, 2022. However, if plaintiff's FTCA claim is not acknowledged or is denied, plaintiff reserves the right to ask for leave to amend this lawsuit to include the government defendants as well as U. S. Attorneys Duston Slinkard and Christopher Allman.

113.   Plaintiff suffered severe emotional distress and bodily harm as the result of defendants' actions to engage in malicious prosecution by filing false stalking and contempt charges against her and sending sheriffs' officers to harass her. They acted in privity with Senator Inhofe and the government defendants' efforts to prevent plaintiff from holding office by nearly causing the death of her family member, sabotaging her campaign by blocking emails so that she would appear non-responsive to constituents, blocking donations to her website and/or converting them to himself or the government, breaking up her relationship

with her soul mate to cause her severe depression and loss of income, and instructing the IRS to file false liens against her properties which caused her to lose the sale of her small home in Tulsa in June 2021.

114.   The defendants were all involved in conspiracy/collusion, fraud by commission/intentional fraud, malicious prosecution and intentional emotional distress to deny plaintiff her Constitutional rights.

115.   The harassment and targeting by the government defendants and these defendants has been continued and ongoing retaliation to violate plaintiff's rights including her right to freedom of speech under the First Amendment.

116.   At the direction of Senator Inhofe, the federal defendants authorized surveillance and harassment against plaintiff in violation of FISA and the Patriot Act. Their actions were willful and wanton to illegally invade plaintiff's cell phone and computer to monitor her activities, sabotage her campaign, and break up her relationship, and the defendants named herein were further involved in this plan to target plaintiff.

117.   Spying on U.S. citizens is illegal under Section 215 of the Patriot Act and FISA, but Ms. Curry and the government defendants illegally initiated covert surveillance to deprive plaintiff of her rights.

118.   The violation of plaintiff's rights also included those under Color of Law 42 USC 1983, 42 USC 1985 (1) & (3), 18 USC 242, her Fourth Amendment right to privacy, and her right to due process of law land equal protection under the 14th Amendments to the U.S. Constitution.

119.   Plaintiff has exhausted all administrative efforts to try and stop the illegal and unwarranted surveillance and malicious targeting by Senator Inhofe, the government defendants and these defendants against her and her loved ones to cause intentional emotional distress and bodily harm.

120.   Such extreme targeting of American citizens who run against wealthy incumbent career politicians for a political office is an abuse of power and outrageous government conduct. It should not be allowed to continue.

121.   In fact, President Trump vowed to remove innocent people from the terrorist watchlist in a debate with Hillary Clinton on September 29, 2016.  He was unable to fulfill this campaign promise since he was fraudulently removed from office in November 2020.

122.   Filing an FTCA claim under Form 95 does not apply to government contractors and is the

reason plaintiff must file this suit now to include defendant Curry in order to preserve the statute of limitations for her federal claims against her.

123.   At a hearing on March 3, 2022, the Sedgwick County Court allowed service of this lawsuit and summons for defendant Christine Curry to be accepted by her lawyer, defendant Attorney Rebecca Hesse, which is proper service in accordance with Fed. R. Civ. P. 4(1)(c)(3).

124.   Plaintiff has exhausted all efforts, administratively and otherwise, to try and settle this matter prior to filing suit to no avail. She is justified in bringing this suit so that justice will prevail.

125.   Plaintiff has demanded that defendants take action to make her whole for her losses. Defendants have refused plaintiff's demands.

## LAW AND ANALYSIS

Defendant violated numerous national laws, statutes, ordinances and regulations, including but not limited to:  Denial of Rights Under Color of Law (42 USC 1983), 18 U.S.C. 242, 42 USC 1985(1) & (3), right to freedom of speech under the First Amendment, right to privacy under the Fourth Amendment (as incorporated to the states through the 14th Amendment) and plaintiff's right to due process and equal protection under the 14th Amendment to the United States Constitution, conspiracy/collusion, fraud by comission and intentional emotional distress. Denial of Rights Under Color of Law 42 USC 1983 states:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

This applies to the plaintiff through the states under the 14th Amendment, since "all persons shall not be deprived of …life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. In addition, 18 U.S.C. 242 states:

> "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State… to the deprivation of any rights, privileges, or immunities, secured or protected by the Constitution or laws of the United States… shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use or threatened use of a

15

dangerous weapon (DEW)… shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section… or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

The overt acts of fraud by commission and collusion in this matter which were engaged in by the government defendants and by these defendants to deprive plaintiff of her rights include but are not limited to: denying plaintiff's right to be free from retaliation regarding her freedom of speech, denying her due process and her right to privacy by illegally surveilling her under the FBI National Security Watchlist, FISA and the Patriot Act, targeting her family member with Directed Energy Weapons (DEW) to give them Covid and participation in a covert operation to destroy plaintiff's relationship with her high school boyfriend/soul mate and later convert his assets to the defendants using nanobots/CIA brainwashing techniques which are crimes against humanity under the War Crimes Act, engaging in communications with defendants and state/government actors to sabotage her campaign to prevent her from holding office, blocking emails and donations to her campaign, filing liens against her homes in Kansas and Oklahoma to deprive her of her property, engaging in malicious prosecution by bringing false stalking and contempt charges to try and have her incarcerated and/or committed, and sending sheriffs to her home to harass her without good cause.

The defendants were acting in privity and their ultimate goal was to deny plaintiff her inalienable right to "life, liberty and the pursuit of happiness" and to deprive her of holding office under 42 USC 1985 (1)&(3). E.O. S-1233, DOD Directive S-3321.1 and National Security Directive 130 also states: "The United States military and Intelligence Communities are forbidden by law from targeting U.S. citizens with PSYOPS within U.S. borders." Furthermore, the federal government and its agents thereof are prohibited from committing acts of war upon unarmed, non-combatant civilians." 18 U.S.C. 2441.

The federal court has jurisdiction in this matter under 28 U.S.C. 1331, since the plaintiff is suing the United States government and various departments, agencies and state actors, known and unknown, thereof. This case warrants claims involving tort of outrage, bad faith, outrageous government conduct, abuse of power and manifest injustice. The defendants acts are indicative of legalized stealing/extortion and harassment of plaintiff and her loved ones to violate her rights, defame her and have her incarcerated or

committed in order to prevent her from holding office as a United States Senator in 2022. Accordingly, plaintiff is justified in alleging each of the following claims against the defendants.

### 1.   Violations of Plaintiff's First Amendment Right to Freedom of Speech (as incorporated to the States through the 14th Amendment)

126.   Plaintiffs incorporate by reference paragraphs 1 through 125 of this Complaint.

127.   The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," and other known/unknown state actors) to willfully participate in their plan to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist to retaliate without good cause against Ms. Farr for her emailed statements to Senator Inhofe and U. S. Attorneys Duston Slinkard and Christopher Allman that she intended to sue if they did not cease and desist targeting her violated her right to freedom of speech under the First Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

128.   The conduct of the above named defendants to participate in unwarranted and illegal domestic surveillance to target plaintiff's loved ones, engage in the covert operation to break up her relationship, bring false charges against her for contempt, send sheriffs to harass her, and maliciously prosecute her to try and prevent her from holding office in retaliation for her comments to Senator Inhofe, the government defendants and U. S. Attorneys Slinkard and Allman to try and get them to cease targeting her deprived plaintiff of her right to freedom of speech under the First Amendment to the Constitution pursuant to 42 USC 1983, 42 USC 1985 (1) & (3) and 18 USC 242.

129.   The above named defendants owed plaintiff a duty not to violate her right to freedom of speech under the aforementioned laws.

130.   The above named defendants breached the duty owed the plaintiff.

131.   As a result of the defendants' conduct in violating Ms. Farr's freedom of speech, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment

interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 2. Violations of Plaintiff's Fourth Amendment Right to Privacy (as incorporated to the States through the 14th Amendment)

132.    Plaintiffs incorporate by reference paragraphs 1 through 131 of this Complaint.

133.    The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," and other known/unknown state actors) to willfully participate in their plan to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist without good cause violated  plaintiff's right to privacy under the Fourth Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

134.    The conduct of the named defendants to participate in unwarranted and illegal domestic surveillance to target plaintiff's loved ones, engage in the covert operation to break up her relationship, bring false charges against her for contempt, send sheriffs to harass her, and maliciously prosecute her to try and prevent her from holding office in retaliation for her comments to Senator Inhofe, the government defendants and U. S. Attorneys Slinkard and Allman to try and get them to cease targeting her deprived plaintiff of her right to privacy under the Fourth Amendment to the Constitution pursuant to 42 USC 1983, 42 USC 1985 (1) & (3) and 18 USC 242.

135.    The conduct of the above named defendants to engage in unwarranted and illegal domestic surveillance and harassment deprived her of her right to privacy under the Constitution pursuant to 42 USC 1983, 42 USC 1985 (1) & (3) and 18 USC 242.

136.    The above named defendants owed plaintiff a duty not to violate her right to privacy under the aforementioned laws.

137.    The above named defendants breached their duty owed the plaintiff.

138.    As a result of the defendants' conduct in violating Ms. Farr's privacy, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 3. Violations of Plaintiff's 14th Amendment Right to Due Process and Equal Protection Under the Law

139.    Plaintiff incorporate by reference paragraphs 1 through 138 of this Complaint.

140.    The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," and other known/unknown state actors) to willfully participate in their plan of engaging in unwarranted and illegal domestic surveillance and harassment of plaintiff under the FBI National Security Watchlist without good cause violated her right to due process of law and equal protection under the 14th Amendment to the United States Constitution.

141.    The conduct of the above named defendants to participate in unwarranted and illegal domestic surveillance to target plaintiff's loved ones, engage in the covert operation to break up her relationship, bring false charges against her for contempt, send sheriffs to harass her, and maliciously prosecute her to try and prevent her from holding office in retaliation for her comments to Senator Inhofe, the government defendants and U. S. Attorneys Slinkard and Allman to try and get them to cease targeting her deprived plaintiff of her right to equal protection under the Fourteenth Amendment to the Constitution pursuant to 42 USC 1983, 42 USC 1985 (1) & (3) and 18 USC 242.

142.    The above named defendants owed plaintiff a duty not to violate her right to due process and equal protection under the aforementioned laws.

143.    The above named defendants breached the duty owed to the plaintiff.

144.    As a result of the defendants' conduct in violating Ms. Farr's right to due process and equal protection, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants

awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 4.   Violations of FISA and the Patriot Act

145.   Plaintiff incorporates by reference paragraphs 1 through 144 of this Complaint.

146.   The conduct of the named defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," and known/unknown state actors) to conduct unwarranted and illegal domestic, physical and electronic surveillance and harassment of plaintiff and her loved ones constitutes a violation of the Foreign Intelligence Surveillance Act of 1978 and the USA Patriot Act.

147.   Under the FBI National Security Watchlist, the named defendants' conduct was to willfully participate in the government defendants' plan of intentional electronic and electromagnetic surveillance of plaintiff and her loved ones without good cause and without a warrant (i.e., telephone and computer monitoring), engage in the covert operation to break up her relationship, bring false charges against her for contempt, send sheriffs to harass her, and maliciously prosecute her to try and prevent her from holding office in retaliation for her comments to Senator Inhofe, the government defendants and U. S. Attorneys Slinkard and Allman to try and get them to cease targeting her.

148.   The above named defendants conduct was an invasion of plaintiff's privacy and attempt to cause intentional emotional distress and bodily harm in violation of FISA and the Patriot Act.

149.   The above named defendants owed plaintiff a duty not to conduct unwarranted surveillance of her and her loved ones to invade her privacy or to cause her mental anguish and bodily harm.

150.   The above named defendants breached their duty owed the plaintiff in this matter.

151.   As a result of the defendants' unwarranted surveillance and invasion of privacy, plaintiff suffered harm in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants

awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 5.    Civil Conspiracy and/or Collusion

152.    Plaintiffs incorporate by reference paragraphs 1 through 151 of this Complaint.

153.    The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," and known/unknown state actors) to participate in their plan to willfully conduct intentional electronic and electromagnetic surveillance of plaintiff and her loved ones without good cause and without a warrant include telephone and computer monitoring, covert operations to target her family member and break up her relationship, bring false charges against her for contempt, send sheriffs to harass her, and maliciously prosecute her to try and prevent her from holding office in retaliation for her comments to Senator Inhofe, the government defendants and U. S. Attorneys Slinkard and Allman to try and get them to cease targeting her constitutes civil conspiracy and/or collusion.

154.    By participating in the plan to target plaintiff in the above manner, the defendants acted with the intent of engaging in illegal and unethical activities to cause Ms. Farr intentional emotional distress/bodily harm and to deprive her of her property, having full knowledge that such acts were substantially certain to result in injury and detriment to plaintiff and her loved ones.

155.    Defendant Christine Curry as a self-employed contractor working for the CIA, was directed by Senator Inhofe and the government defendants to coerce plaintiff's old boyfriend away from her and deprive her of his love and affection to cause her intentional emotional distress, anxiety and depression.

156.    The conduct of the named defendants in conspiring with the government defendants was willful and with malice to cause bodily harm to plaintiff and her loved ones, ruin her relationship, sabotage her campaign to prevent her from holding office as a United States senator, destroy her relationships with family and friends, maliciously prosecute and harass her, and damage her health constitutes civil conspiracy

and/or collusion.

157.   The conduct of the named defendants set forth herein constitutes civil conspiracy/collusion.

158.   As a result of the defendants' civil conspiracy and/or collusion, plaintiff has been damaged in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 6.   Fraud By Comission/Intentional Fraud

159.   Plaintiff incorporates by reference paragraphs 1 through 158 of this Complaint, in which fraud is stated with particularity.

160.   The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," and known/unknown state actors) to participate in their plan to willfully conduct intentional electronic and electromagnetic surveillance of plaintiff to target her and her loved ones, break up her relationship, block campaign emails and donations, file IRS liens against her properties, maliciously prosecute her with false stalking and contempt charges to incarcerate and/or commit her to prevent her from holding office as a United States Senator, send sheriffs to her home to harass her without good cause, all the while knowing that she was innocent of any wrongdoing and that sending court documents is legally exempt from a stalking charge pursuant to K.S.A. 60-31a06(g) constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiff to act to her detriment.

161.   The overt acts of fraud engaged in by the defendants are stated above and these include, but are not limited to: telephone calls, meetings, verbal and written communications, mental processes, filing false charges and the unjust and illegal surveillance of plaintiff and her family member under the FBI National Security Watchlist.

162.   At all relevant times, the above defendants' participation in the plan to target plaintiff and

cause her and her loved ones severe emotional distress and bodily harm was willful and wanton, and with full knowledge that such conduct was substantially certain to result in bodily injury and/or death and detriment to the plaintiff.

163.   The defendants' conduct constitutes fraud by comission/intentional fraud.

164.   As a result of the defendants' fraud by comission/intentional fraud, plaintiff has been damaged in excess of $75,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 7.  Malicious Prosecution

165.   Plaintiff incorporates by reference paragraphs 1 through 164 of this Complaint.

166.   The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," known/unknown state actors), and particularly U.S. Attorney Duston Slinkard, Assistant U.S. Attorney Christopher Allman to retaliate further against plaintiff by filing false stalking and contempt charges against her to try and put her in jail or have her committed to prevent her from becoming a United States Senator in 2022 constitutes malicious prosecution and a violation of 42 USC 1985(1) & (3).

167.   The conduct of the named defendants to conspire with Acting U. S. Attorney Duston Slinkard and Assistant U. S. Attorney Christopher Allman to file false contempt charges against plaintiff without probable cause or reasonable grounds (after they first directed Curry to file a false stalking charge against her), to send sheriffs to harass her and to continue the case with the improper purpose of putting her in jail or having her committed to prevent her from winning the United States Senate in 2022 constitutes malicious prosecution.

168.   At all relevant times, the named defendants' participation in a plan to target plaintiff with false stalking and contempt charges and to send sheriff's officers to her door on three occasions to harass her

23

caused her severe emotional distress and bodily harm was willful and wanton, and with full knowledge that such conduct was substantially certain to result in injury and/or death and detriment to the plaintiff.

169.   Since sending court documents is exempt from stalking charges which the defendants were well aware of prior to bringing false contempt charges against plaintiff, these were dismissed by the lower court and therefore, defendants' conduct constitutes malicious prosecution.

170.   As a result of the defendants' malicious prosecution, plaintiff has been damaged in excess $75,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

## 8. Outrageous Government Conduct Causing Intentional Infliction of Emotional Distress/Tort of Outrage

171.   Plaintiff incorporates by reference paragraphs 1 through 170 of this Complaint.

172.   The conduct of the defendants in privity with the government defendants (DOD, DOJ, FBI, CIA, Senator James Inhofe, "alphabet soup," known/unknown state actors) including Acting U. S. Attorney Duston Slinkard and Assistant U.S. Attorney Christopher Allman, to participate further in the plan to target plaintiff and her loved ones was extreme and outrageous. Their conduct to engage in willful and intentional electronic and electromagnetic surveillance of plaintiff and her loved ones without good cause and without a warrant include telephone and computer monitoring, covert operations to target her family member and break up her relationship, block campaign emails and donations to sabotage her campaign, file IRS liens against her properties, engage in malicious prosecution to fraudulently bring false stalking and contempt charges to prevent her from holding office and sending sheriffs to harass her constitutes civil conspiracy/collusion and intentional infliction of emotional distress/tort of outrage.

173.   The defendants' conduct to illegally target plaintiff in the above manner during her campaign to

cause her intentional emotional distress and bodily harm without good cause was extreme and outrageous.

174.   By participating in the government defendants' plan to target plaintiff and her loved ones, sabotage her campaign to prevent her from holding office, engage in malicious prosecution by bringing false stalking and contempt charges against her, then further harass her by sending sheriffs' officers to her door to cause her severe emotional distress, mental anguish and bodily harm, the defendants breached their duty owed the plaintiff. Their conduct was grossly disproportionate under such circumstances, and amounted to an abuse of power that shocks the conscience of any reasonable person.

175.   At all relevant times, the defendants' participation in the above plan to cause plaintiff severe emotional distress and bodily harm was intentional, willful and malicious, and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to plaintiff.

176.   The conduct of the defendants and others to participate in targeting plaintiff and her loved ones to harass her and engage in malicious prosecution toward her while knowing that she was innocent was in bad faith and violated the duties of good faith and fair dealing toward the plaintiff.

177.   Due to the defendants' acts and failures to act, plaintiff suffered severe emotional distress and bodily harm as a result of their participation in the above plan to cause her extreme pain and suffering include, but are not limited to: severe depression, the loss of love and affection of her soul mate, increased anxiety, lost friendships, inability to continue working, insomnia, neck pain, nightmares, a ruptured disc in her neck and exacerbation of her skin cancer resulting in a squamous cell carcinoma on her leg.

178.   The conduct of the defendants was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Reciting the facts in this matter to an average person causes resentment toward all defendants, and leads them to exclaim: "Outrageous!"

179.   The outrageous conduct of the defendants constitutes intentional infliction of emotional distress / bodily harm and liability to plaintiff for her injuries.

180.   Due to the emotional distress resulting from the illegal acts and failures to act directed at plaintiff by the defendants, plaintiff suffered severe emotional distress and bodily harm.

181.   As a result of the outrageous conduct by all defendants, plaintiff has been damaged in excess of $250,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

Respectfully submitted,

By: *Joan E. Farr*
Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

## DESIGNATION OF TRIAL

Plaintiff designates Kansas City, Kansas as the location for the trial in this matter.

Respectfully submitted,

By: *Joan E. Farr*
Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

Respectfully submitted,

By: *Joan E. Farr*
Joan E. Farr, individually, *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
JoanFarr73@aol.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on this **30**ᵗʰ day of March 2022, a copy of the above and foregoing Complaint was filed with the United States District Court for the District of Kansas, and copies deposited in the United States mail, certified with return receipt and properly addressed, to:

Christine Curry
c/o Rebecca Hesse, Attorney at Law
Kansas Legal Services, Inc.
340 S. Broadway, 2nd Floor
Wichita, Kansas 67202

Rebecca Hesse, Attorney at Law
Kansas Legal Services, Inc.
340 S. Broadway, 2nd Floor
Wichita, Kansas 67202

Kansas Legal Services, Inc.
Attn: Marilyn Harp
712 S. Kansas Avenue, Suite 201
Topeka, Kansas 66603

By: _Joan E. Farr_

Joan E. Farr, individually, *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
JoanFarr73@aol.com