Joan E. Farr
7145 Blueberry Lane
Derby, KS 67037
Phone: 918.698.3289
JoanFarr73@aol.com

FILED
U.S. District Court
District of Kansas

FEB 2 8 2023

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Joan E. Farr, individually, *pro se*,<br>and in the interests of innocent American citizens,<br><br>Plaintiff,<br><br>vs.<br><br>Christine Curry, Kansas Legal Services, Inc., Attorney Rebecca Hesse, other known/unknown state and government actors,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:22-cv-2120-DDC-KGG<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS HESSE'S AND KANSAS LEGAL SERVICES' MOTION FOR PERMANENT INJUNCTION AND MEMORANDUM IN SUPPORT**

COMES NOW the plaintiff, Joan E. Farr, individually, *pro se*, and in the interests of innocent American citizens, and files this response to defendants Hesse's and Kansas Legal Services' motion for permanent injunction and memorandum in support. In support, plaintiff states as follows:

**I.      Relief sought**

Plaintiff is not an ongoing vexatious litigant. She is only trying to seek "justice for *all*" as stated in The Pledge of Allegiance which she recited as a child every day in school growing up. If America is "one nation under God," then we should be following the Bible as well as the U.S. Constitution. It clearly states: "Do not deny justice to your people in their lawsuits." *Exodus 23:6*.

**II.     Statement of the Nature of the Case Before the Court**

Plaintiff contends that the Court has rendered a judgment in this case based on clear error. She would have appealed it, but she has spent too much of her own money for the past 22 years trying to acquire justice in this case as well as others she has been forced to file *pro se*. She also chose not to

1

appeal the instant matter [*Farr II*] to save court resources; however, if *Farr III* is dismissed [Case No. 2:22-cv-2476], she believes that it will be reversed and remanded on appeal. Will the courts in Kansas (and all the way up) ever stop ruling against her in the face of overwhelming direct clear and convincing evidence that she has presented each time? Any reasonable person would believe that she has been prejudiced by the courts and denied due process of law based on continued arrogance and oppression. These are extraordinary circumstances which the Court should dutifully consider.

Litigiousness alone will not support an injunction restricting filing activities. *In re Oliver*, 682 F.2d at 446 (1948); *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir.), cert. denied, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980); *Castro v. United States*, 775 F.2d at 408 (1985). Notwithstanding, the defendants' complaint that they have expended $11,000 in legal fees which may cause a rise in their insurance premiums is a paltry excuse to try and absolve them of their crimes. She would like to pour them a tall glass of "get over it" and give them a straw so they can "suck it up." It would be a clear abuse of discretion for this Court to grant a permanent injunction for this reason. Indeed, the amount of money plaintiff has had to spend over the years pales in comparison, not to mention the defendants' continued infliction of emotional distress which no person should have to endure. Invisibly breaking into her home to cause mental anguish is the height of cruelty in a civilized society.

### III.    Statement of Facts

Plaintiff's claims in this matter are not identical to her prior cases. Case No. 21-2183 [***Farr I***] **was filed with 1983 claims only** in April 2021 against Senator Inhofe and his cohorts for *retaliation* just because she ran against him in 2020 (she hadn't even decided to run yet in 2022). It was dismissed for failing to first file an FTCA claim against him, and when she did, he was forced to resign two days later. This case [***Farr II***] **was filed with 1983 & 1985 (1 & 3) claims** in March, 2022 against CIA "poser" Curry and her lawyers for *threats and intimidation* so she would not win in 2022. Finally, **Farr III was filed with 1983 & 1985 [1] (2) & (3) claims** after she lost in 2022 and realized that Kansas Senator Jerry Moran and others were part of the "schemed plan" to rig her election. Therefore, plaintiff's claims are not the same, there is an intervening change in controlling law, and a permanent injunction is clearly

unwarranted. The totality of facts in these cases should be considered, and any reasonable person who reads them would believe that plaintiff will prevail. When she does, defendants will sing like jailbirds.

Furthermore, defense counsel errs in his statement that none of plaintiff's cases have ever "succeeded in advancing to the discovery stage" [Doc. 64, p. 5, E.] He is well aware that her HOA case went to discovery before it was dismissed and that the Court ignored her substantial clear and convincing evidence [Case No. 16-cv-2180]. In fact, the Court told her there wasn't a case like it in a five-state area. Furthermore, plaintiff helped her son take his case all the way up involving an unscrupulous lawyer and trustee who were stealing his inheritance left by their grandmother in New York [Case No. 17-cv-1192]. Even though it was also dismissed with overwhelming evidence attached, opposing counsel told plaintiff he was impressed that she had sued President Bush. A short time later, he gave plaintiff's son his inheritance anyway [see **EXHIBIT A**]. Therefore, defendant errs in his vague assumption that plaintiff is losing.

## IV.     Argument and Authorities

Defense counsel states that "another district judge in this district reviewed the filings of a *pro se* litigant and concluded that the Court was within its discretion to curtail plaintiff's filing rights in light of three meritless filings." *Blaylock v. Tinner*, 2013 WL 1491207 (D. Kan. 2013). That judge was Judge Eric Melgren who was appointed by President George W. Bush, and plaintiff's cases go back to when he was president. In fact, she wrote to President Bush regarding her lawsuit over the government targeting of her 14-year old son with false charges [Case No. 05-4028-SAC]. He later wrote back to thank her for her letter concerning "corporate fraud." Also, in quoting *Tripati v. Beaman,* counsel fails to note the ruling in this case by the Tenth Circuit. They ruled that a court may not prohibit a frequent filer from filing another lawsuit without setting out standards that would guide the determination and giving the litigant notice and opportunity to be heard. *Tripati v. Beaman,* 878 F.2d 351 (10th Cir. 1989). In its dismissal, plaintiff was given no such standards by this Court in guiding the determination or any opportunity to be heard.

Plaintiff's conduct in this Court does not meet any of the five criteria defense counsel quotes in *Blaylock v. Tinner*, *United States v. Kettler*, or *Safir v. U.S. Lines, Inc.* [Doc. 64, p. 6-7]. Any reasonable person would agree after reading the facts and evidence in plaintiff's previous cases and *Farr III* that

none of these suits were vexatious, harassing or duplicative; that all of her claims were made in good faith and plausible not frivolous; that she was forced to proceed *pro se* due to extraordinary circumstances; that it was the courts all the way up who have abused their discretion to cause her needless expense because they refuse to grant justice in her *prima facie* cases; and that imposing other sanctions or filing restrictions would be a further abuse of discretion by this Court. In a similar case, defendants requested sanctions [including filing restrictions] against a plaintiff to prohibit him from filing lawsuit after lawsuit, and even though he failed to state a claim for which relief may be granted, the merits of his [state] claims were undecided producing a similar outcome, and such circumstances did not warrant any filing restrictions. See *Berg v. Ayesh*, Case No. 13-1164-DDC-KGG (D. Kan. Jun. 11, 2014).

Filing restrictions are imposed absent a showing of good cause. See *Gilbert v. Soc. Sec.Comm'n*, No. 21-3156-JWL (D. Kan. Oct. 13, 2022). In this case, plaintiff has demonstrated unique, extraordinary and exceptional circumstances, and her issues rise to the level of manifest injustice. The Kansas Supreme Court has interpreted the phrase "manifest injustice" "in the context of K.S.A. 60-1507(f)(2), to mean "obviously unfair" or "shocking to the conscience." *State v. Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013). It is the movant's burden to establish manifest injustice by a preponderance of the evidence, which plaintiff has clearly done. Supreme Court Rule 183(g)(2014 Kan. Ct. R. Annot. 285).

Furthermore, plaintiff has been denied due process of law and the right to a trial by jury, and she has spent triple the time of these defendants trying to adjudicate her quasi-criminal claims. Courts all the way up could have appointed her counsel at any time but chose not to, and she has only been trying to protect her own interests. Fraud on the court occurred in Sedgwick County District Court and is occurring even now in the filing of this request. Farr has already shown clear and convincing evidence in this case that Curry is an operative for the CIA and that their harassment of her is continued and ongoing which was ignored by this Court in *Farr III* (see **EXHIBITS B & C**).

These defendants' acts were part of the conspiracy to continue Curry's false relationship with plaintiff's soul mate to cause her severe distress and then maliciously try and commit her to a mental institution so she would lose her election (which was ultimately rigged in the end). Courts have

4

repeatedly held that suffering must be extreme or utterly intolerable in a civilized society. *Robbins Motorsports v. National Fire Marine Ins. Co.*, Case No. CIV-10-245 –JHP (E.D. Okla. Jun. 3, 2011). Plaintiff suffered exacerbated neck pain from the ruptured disc in her neck she incurred in *Farr I*, the loss of affection from her ex which caused her not to want to go on living, extreme anxiety causing skin cancer lesions on her leg, severe hair loss, and ongoing nightmares from the CIA continuing to break into her home and stalk her. Any reasonable person would agree that plaintiff's suffering was so severe that no reasonable person should have to endure it and extreme and utterly intolerable in a civilized society. See *Cohlmia*, 448 F. Supp. 2s at 1272 (internal quotation marks omitted). Indeed, defendants should not be exonerated from their conspiratorial acts which were *in terrorem populi* – "to the terror of the people."

## V.     Plaintiff's Arguments and Authorities

Even if this Court should dismiss *Farr III*, it is likely that plaintiff will succeed on appeal for two reasons. The first is that it is clear that her case falls within the bad faith and harassment exception to the *Younger* abstention doctrine. A federal plaintiff may overcome the presumption of abstention "in cases of proven harassment or prosecution undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Perez v. Ledesma*, 401 U.S. at 85, 91 S.Ct. at 677 (1971). Plaintiff's facts and evidence are irrefutable to show that per *Younger*, the irreparable injury was "both great and immediate." 401 U.S. at 46, 91 S.Ct. at 751 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed.927 (1926).

In determining whether a prosecution is commenced in bad faith or to harass, the court looks at the following factors: "whether it was frivolous or undertaken with no reasonably objective hope of success" (and whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions (evident in the false stalking and contempt charges brought against plaintiff). *Phelps v. Hamilton,* 59 F.3d at 1065 (10th Cir. 1995). Such unconstitutional retaliation was the substantial motivating factor behind the defendants' decision to commence prosecution against plaintiff who has already made an initial showing of *retaliatory animus*. Therefore, the burden shifts to the defendants to "rebut presumption of bad faith by offering

5

legitimate, articulable, objective reasons to justify decisions to initiate prosecutions" which they failed to do. *Id*, 1059. It should be noted that in contributing to defamation of plaintiff over her previous litigation, defendants risk further prosecution in *Farr III* under Kansas criminal defamation laws which state that the truth of the information communicated shall be admitted as evidence. *Kan. Stat. Ann. & 21-4004 (1988).*

The second reason plaintiff will succeed on appeal of *Farr III* is this: N<u>o matter what *pro se* cases are cited by defendants as controlling case law to show that her claims are implausible, frivolous or fantastical, **none** of these cases showed such overwhelming, direct, clear and convincing evidence that plaintiff has shown to prove her claims and the extraordinary/exceptional circumstances involved which confirm the manifest injustice that is continuing toward her.</u> Exceptional circumstances under K.S.A. 60-1507 and Supreme Court Rule 183(c)(3) (2014 Kan. Ct. R. Annot. 285) "have been defined as 'unusual events or intervening changes in the law." See *Edgar v. State*, 344 P.3d 397 (Kan. Ct. App. 2015).

Indeed, it is plaintiff who should be asking for a permanent injunction in this matter. She has alleged sufficient circumstances to support the inference of a vindictive prosecution which establishes a *prima facie* case of vindictiveness. *United States v. Adams,* 870 F.2d 1140, 1146 (6th Cir.1989).). While a plaintiff who has been constitutionally injured can bring a 1983 action to recover damages, they cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future. *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). Plaintiff has already shown that defendants would continue to injure her likewise in the future, had she not brought this suit and then *Farr III*. Permanent injunctive relief is therefore warranted to prevent defendants from continuing their willful and malicious conduct toward <u>her</u>.

### *Additional Arguments and Authorities*

1. It is not procedural for defendants to ask for a permanent injunction, since they haven't even asked for a temporary one. To obtain preliminary injunctive relief, a party must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. See *Terry v. Jones*, 2007 WL 962916, at *1 (W.D.Okla. March 30, 2007)(quoting *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994)). Because plaintiff's motion concerned alleged conduct unrelated to the

6

constitutional violations claimed, he was not entitled to injunctive relief. Notwithstanding, some courts have ruled that a permanent injunction may only be filed in an ongoing case, and this case was closed by the Court on December 20, 2022. Administrative closure of a case terminates pending motions; however, courts would give movants leave to refile motions once a case is reopened. See *Vreeland v. Vigil*, Civil Action 18-cv-03165-PAB-SKC (D. Colo. Jan. 19, 2022).

2. Plaintiff has already asked the Court to join defendants Curry, Hesse and KLS in *Farr III* which includes the government defendants involved in this matter. To date, Judge Crabtree has not yet ruled concerning this request. A district court has power to enjoin litigants who abuse the court system by harassing their opponents. *28 U.S.C. @ 1651(a)*. In a similar matter, the court hesitated to place restrictions on future litigation that may involve other parties and other claims because the lawsuit involved more than the plaintiff and defendant. See *Hall v. Great Southern Bank*, Case No. 09-2600-CM (D. Kan. Oct. 28, 2010). Furthermore, even a preliminary injunction is an extraordinary remedy, the right to which must be clear and unequivocal. *ISCFC ILC, Inc., v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). A court may only enjoin parties that are before it. In another matter on appeal, appellants presented no evidence to support their claim of irreparable harm to justify issuance of an injunction. *Board of Reno County Comm'rs v. Asset Mgmt. & Marketing, L.L.C.*, 28 K.A.2d 501, 18 P.3d 286 (2001).

3. Generally, a permanent injunction is appropriate only after the parties have been heard fully at trial or on a motion for summary judgment, and the entry of judgment is appropriate. *Dillon Companies v. United Food Com. Workers Union*, Civil Action No. 09-cv-01364-PAB-BNB (D. Colo. Jun. 23, 2009). Plaintiff was not fully heard at trial in this matter since it was dismissed prior to discovery, and the entry of judgment was inappropriate due to clear error. Furthermore, a permanent injunction is "[a]n injunction granted after a final hearing on the merits." "Injunction," supr. Cf. *Borrego v. El Guique Cmty. Ditch Ass'n*, 1988-NMSC-081, para. 8-9, 107 N.M. 594, 762 P.2d 256, 258-59 (describing a permanent injunction occurring after a preliminary injunction). Any reasonable person would believe that this case was improperly dismissed and was not decided on the merits.

4. There is a balancing test that courts typically employ in determining whether to issue an

injunction. The Supreme Court in *Weinberger v. Romero-Barcelo* laid out a four-step test that a plaintiff must pass to obtain a permanent injunction: (1) that plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant; and (4) that the permanent injunction being sought would not hurt public interest. In *eBay, Inc. v. MercExchange, LLC*, the Supreme Court further clarified that the decision to grant or deny permanent injunctive relief is an act of equitable discretion by a U.S. district court, reviewable on appeal for abuse of discretion. In balancing the damages to the plaintiff and the defendant and the public interest, the courts balance the relative harm and benefit to both the defendant and the plaintiff if the injunction is granted. Plaintiff's political career is harmed even further if the Court grants a permanent injunction while the defendants are hardly scathed.

     5.    In some jurisdictions, courts take into consideration good faith of the parties. If it seems the defendant is acting in good faith, by doing all that it can to abate the nuisance, the court may reflect those efforts in the terms of its order. In contrast, if the court believes the defendant is acting in bad faith, the court will show little sympathy and rule in favor of a permanent injunction. See, e.g., *Penland v. Redwood Sanitary Sewer Serv. Dist.*, 965 P.2d 433, 440 (Or. Ct. App. 1998); *Holubec v. Brandenburger*, 58 S.W.3d 201, 213-14 (Tex. App. 2001), rev'd on other grounds, 111 S.W.3d 32 (Tex. 2003). Here the roles are reversed since defendant is acting in bad faith to even request a permanent injunction while plaintiff is acting in good faith. Any reasonable person who reads the facts and evidence in this case would not agree with granting a permanent injunction against plaintiff to ruin her political career. If there was ever a reason to justify overhauling our legal system, it would be *Farr I, Farr II* and *Farr III*.

     WHEREFORE, plaintiff respectfully requests that this Court deny defendants' motion for a permanent injunction, grant her request to enjoin these defendants in Case No. 22-2476, allow further *pro se* filings in this case if necessary, deny any further filing restrictions in this District without first obtaining leave from the Court or representation by an attorney in good standing licensed to practice in the State of Kansas and admitted to practice in this Court for the aforementioned reasons, UNLESS the

Court is willing to appoint her an attorney she can trust to give her effective assistance of counsel.

> "God is a just God and He will repay the exact compensation owed you.
> He will settle and solve the cases of His people." ***Hebrews 10:30***

Respectfully submitted,

By: *Joan E Farr*
Joan E. Farr, individually, *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2023, a copy of the above and foregoing Plaintiff's Response to Defendants Hesse's and Kansas Legal Service's Motion for Permanent Injunction and Memorandum in Support was filed with the United States District Court for the District of Kansas, and pursuant to D. Kan. Rule 5.4.9(a), notice of electronic filing is automatically generated by the court's Electronic Filing System (CM/ECF) to send notifications of such filing to the email addresses on the electronic mail notice list.

By: *Joan E. Farr*
Joan E. Farr, individually, *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

EXHIBIT A

LAW OFFICES

*Lite & Russell, PLLC*

212 HIGBIE LANE
WEST ISLIP, NY 11795-2897

Joseph Lite (1926-1990)
Justin N. Lite
Frank S. Russell
John M. Porchia
Michael J. Montgomery
Jaren M. Fernan

Telephone: (631) 669-3710
Facsimile: (631) 669-3812

September 10, 2019

Guy Heffington
7145 Blueberry Lane
Derby, KS 67037

Re: Trust of Nyla J. Heffington

Dear Mr. Heffington:

Enclosed herewith, please find the Informal Instrument Settling Account with regard to the above-mentioned trust.

Kindly review same and absent any question or comment, please sign the attached Voucher and Release of Waiver where indicated before a notary public and return same to this office.

Pursuant to the Trust, you are technically not entitled to your share until you attain the age of thirty (30) years. Pam Puleo as Trustee has discretionary authority to distribute your share outright to you now provided that you execute and return a release form (also enclosed).

Upon receipt of the executed Voucher and Release we will remit a check to you in the amount indicated; $246,520.45, less any payments that already have been made to you.

Please note that you have the absolute right to seek independent representation or advice; otherwise, feel free to contact my office should you have questions.

If we do not receive the executed Voucher and Release within twenty (20) days hereof, we will have no alternative but to seek Judicial Intervention to judicially settle the accounting, which consequently would incur additional expense and time.

Kindly be guided accordingly.

Very truly yours,

LITE & RUSSELL, PLLC

JUSTIN N. LITE, ESQ.

## AFFIDAVIT OF STEVEN GAMMILL

I, Steven Gammill, upon oath being duly sworn, state that I am over 21 years of age and have personal knowledge of the facts stated herein.

I am 50 years old have lived in the south area of Florida since 2002. From 2002-2008, I owned a mortgage company in Florida. I began speaking truth on Facebook in approximately 2009 after President Obama got elected and because of that, I began being targeted by the government. Every time I posted something negative about President Obama, the government would electrocute me directly for 3-4 days in a row. I must have been implanted with a microchip for tracking purposes, since I have been poisoned by nanotechnology and tortured with electronic harassment hundreds of times during the night to cause sleep disturbance. About two years ago, I contacted the Orange County Sheriffs Department about this and spoke to a Christian officer and he managed to get the targeting to stop. As a result of this harassment over so many years, I now have severe neuropathy, extreme memory loss and major health issues. I am disabled for life. In approximately 2010, I hired an EMF analyst and she informed me that my home was highly toxic with EMF radiation. I agree that a National Security Letter is used to put a person on the terrorist watchlist and have been helping other people in the United States who have an NSL issued against them by the FBI like I do. In my estimation, there are about 700,000 targeted individuals in the United States alone. I am well aware of the government putting microchips in people without their knowledge, and firmly believe that they have developed a "cloak of invisibility" to carry out their clandestine activities discreetly. I am aware of the lawsuit filed in Texas with over 400 targeted individuals. It is Case No. 6:23-cv-00003 filed on January 11, 2023 against government officials for crimes against humanity involving the use of Directed Energy Weapons being used to target innocent people on the terrorist watchlist.

I have known Joan Farr since approximately 2010 when I contacted her to try and file a federal lawsuit. We have kept in touch since then, and I knew that she also ran for the U.S. Senate in Oklahoma in 2014 and 2020 against Senator Jim Inhofe who had been in Congress for 30+ years. I have been aware since late 2021 that she was running for the U.S. Senate in Kansas and Oklahoma in 2022. When she told me that Senator Inhofe had targeted her son with DEW, sabotaged her campaign by blocking the donation and contact buttons on her website, used a CIA "poser" to break up her relationship, filed false IRS liens against her homes and made sure she didn't get publicity in retaliation for running against him in 2020, I believe it. I also believe that he conspired further to try and bring false stalking charges against her to try and commit her and then rig her election. Joan later told me that the percentage of votes for her stayed at a steady 20-22% rate while the votes for Senator Moran stayed at a steady 78-80% the entire night, and that she lost the Kansas primary on August 2, 2022. Joan has been telling me for years that they fix the elections in Kansas and that it is done by "flipping" the votes so that Deep State candidates always win, and I believe it.

I agree with Joan that I think Senator James Inhofe and Senator Jerry Moran were involved in a conspiracy to try and prevent her from winning the election for the United States Senate in Kansas. I know about all of the targeting that Joan went through when she ran in Oklahoma, and Senator Moran very likely conspired with Senator Inhofe of Oklahoma to make sure that she didn't win in Kansas. The Deep State career politicians on both sides of the aisle do not want Christians getting into Congress and especially anyone who opposes the New World Order/Agenda 21-30/The Great Reset.

FURTHER AFFIANT SAYETH NAUGHT.

Steven Gammill

STATE OF FLORIDA )
                 )
COUNTY OF ORLANDO )

BE IT REMEMBERED that on this 24 day of January 2023, Steven Gammill personally known to me to be the person who executed the foregoing instrument of writing, appeared before me personally and duly acknowledged and executed same. IN TESTIMONY WHEREOF, I have hereunto set my hand and notarial seal for the above county and state, the day and year above written.

Steven Gammill

My appointment expires: January 3, 2026

MIRANDA ROSE WILENT
Notary Public - State of Florida
Commission # HH 212860
My Comm. Expires Jan 3, 2026
Bonded through National Notary Assn.

Affidavit for Joan Farr

EXHIBIT C

# AFFIDAVIT OF KAREN MELTON-STEWART

I, Karen Melton-Stewart, upon oath being duly sworn, state that I am over 21 years of age and have personal knowledge of the facts stated herein.

I currently live in Maryland. From 1982-2010, I worked for the National Security Agency (NSA) for 28 years. During that time, my job description was foreign language intelligence analyst. I wrote a 6-month series of Top Secret reports proposal in 2002 and discovered credit and a rare double promotion for my work was given to a younger woman who was sleeping with multiple managers. When I reported this to the NSA Inspector General, I was viciously threatened, harassed then illegally fired and then apparently falsely put on the terrorist watchlist. Under FBI Fusion Center orders, failed attempts were made to try to institutionalize me and jail me as acts of retaliation. I have spent years trying to expose these abuses and help wrongfully targeted victims in the United States to get assistance due to being targeted by the rogue FBI, CIA and other government agencies. Often, a victim was targeted by someone with connections who was jealous or felt threatened by their abilities, who then falsely reported them as "a threat" so an FBI Fusion Center would fraudulently target them. Some estimations say that there are approximately 400,000 targeted individuals in the United States alone. The government is indeed putting microchips in people surreptitiously and know from viewing videos that they have developed a "cloak of invisibility" to carry out their clandestine activities discreetly. I am currently a plaintiff in a lawsuit filed in Texas along with 17 other targeted individuals as the first of many such lawsuits. It is Case No. 6:23-cv-00003 filed on January 11, 2023 against government officials for crimes against humanity involving the use of Directed Energy Weapons being used to target innocent people on the (fraud) terrorist watchlist.

I have known Joan Farr since approximately 2016. We have kept in touch since then, and I knew that she also ran for the United States Senate in Oklahoma in 2014 and 2020 against Senator Jim Inhofe who had been in Congress for 30+ years. I have been aware since late 2021 that she was running for the United States Senate in Kansas and Oklahoma in 2022. When she told me that Senator Inhofe had had her son targeted with DEW, sabotaged her campaign by blocking the donation and contact buttons on her website, used a CIA "poser" to break up her relationship, filed false IRS liens against her homes and made sure she didn't get publicity in retaliation for running against him in 2020, I believe it is possible. I also believe that it is possible he conspired further to try and bring false stalking charges against her to try and commit her and then rig her election. Joan later told me that the percentage of votes for her stayed at a steady 20-22% rate while the votes for Senator Moran stayed at a steady 78-80% the entire night, and that she lost the Kansas primary on August 2, 2022. Joan has been telling me for years that they fix the elections in Kansas and that it is done by "flipping" the votes so that Deep State candidates always win, and I believe it is possible in that this is not a rare occurrence in the USA now.

I agree with Joan that Senator James Inhofe and Senator Jerry Moran were quite possibly involved in a conspiracy to try and prevent her from winning the election for the United States Senate in Kansas. I know about all of the targeting that Joan went through when she ran in Oklahoma, and Senator Moran very possibly conspired with Senator Inhofe of Oklahoma to make sure that she didn't win in Kansas. I wish to emphasize that the Deep State career politicians on both sides of the aisle do not want Christians getting into Congress and especially anyone who opposes the New World Order/Agenda 21/30/The Great Reset.

Affidavit for Joan Farr

FURTHER AFFIANT SAYETH NAUGHT.

*Karen Melton-Stewart* (signature)

Karen Melton-Stewart

STATE OF ~~FLORIDA~~ MARYLAND }
COUNTY OF Howard }

BE IT REMEMBERED that on this 23 day of January 2023, Karen Melton-Stewart personally known to me to be the person who executed the foregoing instrument of writing, appeared before me personally and duly acknowledged and executed same. IN TESTIMONY WHEREOF, I have hereunto set my hand and notarial seal for the above county and state, the day and year above written.

9/16/25

Notary Public

My appointment expires:

(Notary seal: Samuel Inhsuh Park, Comm. Exp. 08-10-2025, Notary Public, Howard County, MD)